HAWTHORNE, Justice.
A judgment of the district court dismissing plaintiff’s suit was affirmed by the Court of Appeal for the Parish of Orleans, and the case is now before us under our supervisory jurisdiction to review that judgment. See 89 So.2d 517.
The question for our determination is whether a tenant of the owner of a building can maintain a tort action against a contractor to recover damages caused to him by the fall of a cabinet installed by the contractor for the owner of the house. Plain *525 tiff[1] specifically alleges that the cabinet fell as a result of the defendant’s negligence “in failing to properly install and secure the wall cabinet, specifically in failing to brace the cabinet from underneath”. The judge of the district court dismissed plaintiff’s suit because, as stated by him, “I believe I am bound by the ruling in Schott v. Ingargolia, La.App.1938, 180 So. 462 * * *
In Schott v. Ingargolia, plaintiff while a guest on Ingargolia’s premises sustained serious personal injuries when the building collapsed as a result of vices and defects in its construction. Named as one of the defendants was the contractor, who under a contract with Ingargolia had repaired, altered, and reconstructed the dwelling, and who plaintiff alleged had performed his work in a defective and unskilled manner. In sustaining the judgment of the lower court which dismissed plaintiff’s suit against the contractor on exception of no cause or right of action, the Court of Appeal held that once the owner of a building has accepted a contractor’s work, a third person has no right of action under Article 2315 of the Civil Code against the contractor even though the third person has been injured by negligent work done by the contractor, because there is no contractual relation between the contractor and the injured person or because there is no privity of contract between them, and because in such a case there is no duty of care on the contractor to the injured person.
In the instant case the Court of Appeal, with one judge dissenting, cited and discussed the holding in the Schott case, saying [89 So.2d 521]: “Our conclusion is that there is no liability here since there was no contractual relationship between the contractor, defendant, and the tenant, Wallace M. Davis.” In other words, the Court of Appeal based its conclusion in the instant case squarely on the fact that there was no privity of contract between the tenant and the contractor.
Article 2315 of our Civil Code provides that every act whatever of man that causes damage to another obliges him by whose fault it happens to repair it. In the instant case plaintiff has alleged that Davis has suffered damage, and that the damage was caused by the fault of the contractor. If this allegation is accepted as true, under the plain provisions of this article there is an obligation on the contractor to repair the damage. The question then is whether he is relieved from this responsibility because there was no contractual relation between him and the injured person. We know of no provision of the Code which relieves one by whose fault another is damaged from the obligation to repair the damage because there is no privity of contract existing between them.
*527 In 1842 the English Court of Exchequer decided the case of Winterbottom v. Wright, 10 M. & W. 109, 11 L.J.Ex. 415. From the holding in that case there developed the legal principle that there was no liability of a contracting party to one with whom he was not in privity. Over the years since the holding in that case the courts of the common-law states have made numerous exceptions to this doctrine of privity which have had the effect, according to one text writer,[2] of whittling away the general rule developed from the Winter-bottom case. As another writer [3] says, the “exceptions” have literally swallowed up the so-called “general rule”.
According to Prosser, Law of Torts (2d ed. 1955), ch. 17, pp. 498, 499, “* * * The first [exception] was that if the seller knew that the chattel was dangerous for its intended use and failed to disclose that fact to the buyer, he became liable to a third person injured by such use, on the basis of ‘something like fraud’ in the intentional concealment. A second exception from liability was found when the chattel was furnished for use on the defendant’s premises, treating the user as an invitee. The third, and most important exception held the seller liable to a third person in the preparation or sale of an article ‘imminently’ or ‘inherently’ dangerous to human safety. For more than half a century this category remained vague and imperfectly defined. It obviously included drugs, food and drink, firearms and explosives, but there was much pointless dispute as to how such products as soap, chewing tobacco, or the container of a beverage were to be classified.”
In 1916 the privity doctrine developed from the Winterbottom case was dealt a serious blow in this country in the classic case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696. In that case the New York Court of Appeals, with Justice Cardozo as its organ, held the Buick Company liable in damages to an ultimate purchaser who had been injured when his Buick collapsed because of a defective wheel. The theory of the MacPherson case was that the manufacturer assumed a responsibility to the consumer when it placed its car on the market, but that this responsibility was based not on contract but on the relation between the parties and the foreseeability of harm if proper care was not used in manufacturing the automobiles.
In discussing whether building contractors are still shielded from liability to third persons under the doctrine of privity, Prosser, op. cit. supra, pp. 517-519, says:
“The liability of building contractors has had a long and painful history. *529 Although there is no visible reason for any distinction between the liability of one who supplies a chattel and one who erects a structure, particularly where the latter supplies the parts and materials, this is a field in which the ghost of Winterbottom v. Wright has died very hard. The misbegotten progeny of that case survive even today. Until quite recent years it was the prevailing rule that the contractor would be liable for any injury resulting from his negligence before his work was completed, but that his responsibility was terminated and he was not liable to any third person once the structure was completed and accepted by the owner.
í{í í}í
“As in the case of sellers of goods, the change which has occurred began with inroads upon the general rule with a long list of exceptions. The earliest to develop held the contractor liable for ‘something like fraud’ if he turned the work over knowing that it was defective. Some courts attempted to discover something resembling ‘privity’ of contract in the fact that use by the individual plaintiff was intended or to be anticipated. Still other cases relied on the analogy of the seller of goods, and found a duty to use care where the product of the work could be regarded as ‘inherently’ or ‘imminently’ dangerous. * * *
“The present state of the law is not altogether clear because of the survival of so many of these exceptions, which afford an opportunity to hold the defendant liable without stating any general rule. It appears, however, that the analogy of MacPherson v. Buiclc Motor Co. is at last being accepted. Several recent decisions 37 have placed building contractors on the same footing as sellers of goods, and have held them to the general standard of reasonable care for the protection of anyone who may foreseeably be endangered by the negligence, even after acceptance of the work. * * *
“37. Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 1948, 166 F.2d 908; Hale v. Depaoli, 1948, 33 Cal.2d 228, 201 P.2d 1, 13 A.L.R.2d 183; Hunter v. Quality Homes, 1949, 6 Terry, Del. 100, 68 A.2d 620; Colton v. Foulkes, 1951, 259 Wis. 142, 47 N.W.2d 901 (repairing porch) ; Colbert v. Holland Furnace Co., 1928, 333 Ill. 78, 164 N.E. 162, 60 A.L.R. 353; Wright v. Holland Furnace Co., 1932, 186 Minn. 265, 243 N.W. 387; McDonnell v. Wasenmiller, 8 Cir., 1934, 74 F.2d 320.”
The only case cited or called to our attention in the jurisprudence of this state which applies the privity of contract doctrine to a building contractor is Schott v. Ingargolia, supra, decided by the Orleans *531 Court of Appeal. So far as we can ascertain, the Louisiana Supreme Court has never passed directly on the question of the applicability of the doctrine to a building contractor. The opinion in the Schott case has been the subject of a casenote in 1 La.L.Rev. 233 (1938). The writer of that note points out that the decision in the Schott case, in effect, looks back to Winter-bottom v. Wright which made privity of contract a requisite for liability. The writer of the note says that without this restriction a paralyzing legal responsibility would have fallen on infant industry, and that therefore this rule was evolved as a concession to industrialism. As we have noted, the decision in the Winterbottom case was rendered in 1842, over 100 years ago. If the writer of the casenote is correct in stating that the rule was evolved as a concession to infant industry, that reason for it no longer exists, for industry can now stand on its own feet and needs no concession. The writer of the note also points out that Cooley’s work on torts cited in the Schott case states that there has been a tendency to abandon the doctrine. He further comments that the Schott case overlooks 96 years of development.
Although many jurisdictions apparently still accept the legal principle that after the owner has accepted the work, a contractor is not liable for injuries to a third person caused by the contractor’s defective work, the better view seems to be that lack of privity should not be a legal defense in a tort suit against a contractor.
Finally, as we view the matter, there exists no valid reason for excusing a contractor from liability in a tort action on the privity of contract doctrine or because of want of contractual relations between the contractor and the injured party. If the act of the contractor causes damage and he is at fault, he is under an obligation to the injured party to repair the damage under Article 2315 of our Civil Code, and the injured party has a right of action to enforce the obligation imposed by this article. The contractor, of course, may escape liability under substantive tort law if, for instance, there is no proof of his negligence, no establishment of the fact that the injury or damage was foreseeable or that danger from defective construction would be probable, or no proof that the injury was proximately caused by the contractor’s conduct.
For the reasons assigned the judgment of the district court dismissing plaintiff’s suit affirmed by the Court of Appeal is reversed, annulled, and set aside, and the case is remanded to the district court for proceedings not inconsistent with the views expressed here. All costs incurred in the appellate courts are to be paid by the contractor Charles W. Strecker d/b/a Orleans Cabinet Works; all other costs are to await the final determination of the cause.
*533 McCALEB, J., dissents with written reasons.

. Plaintiff in this case is subrogee of Wallace M. Davis, the tenant, under a written subrogation.

. Prosser, Law of Torts (2d ed. 1955), ch. 17, p. 498.

. 164 A.L.R. 591.