MICHAEL J. McNULTY, Judge Pro Tern.
On July 14th, 1980, Edgar Floyd Lindsey (Lindsey) stepped into a hole within the right of way of Hooper Road while he was in the course and scope of his employment with the Rapides Parish Police Jury, and working as a member of a crew placing signs along the roadway. As a result of this accident and resultant injuries, Lindsey was paid worker’s compensation benefits by Hartford Accident & Indemnity Company (Hartford), who subsequently initiated this litigation to recover those benefits from South Central Bell Telephone Company (Bell). Lindsey intervened in this suit seeking damages in tort.
The facts are little in dispute. In 1975 Bell engaged Richland General Contractors, Inc. (Richland), an independent contractor, to install underground cable along Hooper Road and to remove the existing telephone poles. The hole into which Lindsey stepped was one created by the removal of one of the poles. Hartford named Richland as an additional defendant as did Lindsey in his intervention, and Richland was likewise named a third party defendant by Bell by virtue of an indemnity agreement between those parties. The case was tried by a jury of twelve who rendered unanimous verdicts as to each of the interrogatories propounded to them in the verdict form. They found that the hole into which Lindsey stepped posed an unreasonable risk of harm. They found that Bell did not have custody of the hole and that it had been created by “an irresistible force or persons for which defendants are not responsible”, and they found that neither Bell nor Richland were guilty of any negligence which caused injury to Lindsey. Further, they found that Lindsey was not guilty of any negligence which caused injury to himself, but that he did assume the risk of his injury. Plaintiff-appellant cites four specifications of error, one for each of the findings by the jury with which it disagrees.
I.
Did South Central Bell Telephone Company have custody of the hole?
II.
Was the hole created by an irresistible force or persons for which defendants were not responsible?
III.
Was South Central Bell guilty of negligence which caused the accident of Edgar Floyd Lindsey?
IV.
Did Edgar Floyd Lindsey assume the risk of his injury?
I. ASSUMPTION OF THE RISK
On the outset we agree with the appellant that the jury’s finding of assumption of the risk on the part of plaintiff is clearly erroneous. The evidence and par *1036 ticularly the photographs of the area make it obvious that the hole was almost entirely hidden from view. To constitute assumption of the risk, plaintiff must have known of the danger, must have understood and appreciated the risk of that danger, and must have voluntarily exposed himself to the danger. Landos v. Rockwell International Corp., 470 So.2d 924 (3rd Cir.1985), writ denied 477 So.2d 87 (La.1985). Under these factual circumstances, that could hardly have occurred. This finding does not, however, significantly contribute to the ultimate resolution of this matter.
II. NEGLIGENCE OF THE DEFENDANTS
The hole in question was created approximately five years before Lindsey’s accident. The original pole was buried approximately sixty inches into the ground but on its removal, the hole was refilled and compacted. When examined by defendant’s forensic expert, the hole had an opening at the top of some nine inches but widened beneath the “root growth” to some twelve inches in diameter. It was approximately fourteen inches in depth. We cannot say that the jury’s finding that the hole constituted an unreasonable risk of harm was incorrect under the circumstances.
The uncontradicted testimony of the defendant’s expert was that the fourteen inch depression was created by virtue of events which occurred subsequent to the pole’s removal and the backfilling and tamping of the hole. This, coupled with the testimony of the various activities of others at the site, and possible water erosion of the backfill during the intervening period of some five years, lends considerable credence to the jury’s findings that the hole was created either by an irresistible force or by the actions of others, for example, the landowner who regularly mowed the property, installed culverts, changed the waterflow, and by the Police Jury who likewise performed activities in the area. The jury’s findings in this regard are therefore affirmed.
WHO HAD CUSTODY (GARDE) OF THE PREMISES?
The facts of this case relative to strict liability must be examined in light of the three pronged test enunciated in Loescher v. Parr, 324 So.2d 441 (La.1976) and its progeny: 1. Does the thing pose an unreasonable risk of harm; 2. Was the claimant injured thereby; and 3. Was the thing in the custody of the defendant? As pointed out in Appellee’s brief, the thing to be considered in this case is the premises themselves, that is, the surface of. the immovable property used in part by the landowner as a front yard and by Rapides Parish as a portion of the right of way for its road and ditch. An examination of the facts is necessary to determine who had custody of the premises so as to expose such custodian to strict liability under Civil Code Article 2317. The testimony indicates that the Parish of Rapides exercised control by performing maintenance work over the entire roadway, the shoulder and the ditch in question. The evidence shows that the landowner for some three years prior to the accident, was using this property as the front yard of his residence and that he cleared, leveled and drained the property and inserted culverts in the ditch near the hole. As pointed out by the Appellee, both the landowner and the Parish on a regular basis maintained the surface of the premises where the hole was located and each would have had opportunities to create or contribute to the creation of the hole, discover its existence, and repair it. By contrast, Bell had only the right to maintain its cable which was buried in the back slope of the ditch some distance from the hole. Bell had no right of dominion or responsibility for the maintenance of the surface of the premises and therefore no right or duty to care for or control the premises and particularly the fore slope of the ditch. Appellants argue that at some time South Central Bell did have “garde” or custody of the hole and that because of its contractual rights, could, at any time, have returned to the area to remove the underground wire. *1037 Appellant seems to argue that defendants, once having had custody, retained custody thereafter. This Court in Norman v. Sorrel, 391 So.2d 496 (3rd Cir.1981) appears to recognize that simply because one acquired custody or performed an activity on premises at one time, responsibility for such does not continue indefinitely. This Court found that "... it hardly seems reasonable to hold that a duty persisted for over a year afterwards.”, and further stated that at some time it becomes the owner’s duty to correct and discover risk creating factors on premises over which he has control.
The trier of fact found that neither of defendants were negligent and that Bell did not have custody of the premises five years after its removal of the pole. Pursuant to the holding in Arceneaux v. Do-mingue, 365 So.2d 1330 (La.1978), their findings will not be disturbed.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED.